## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br>GREGORY E PERRA AND DENISE A PERRA<br><br>      Debtors<br><br>GREGORY E. PERRA AND DENISE A. PERRA<br>      Plaintiffs<br><br>v.<br><br>BANK OF AMERICA CORPORATION, GREEN TREE SERVICING, LLC, AND DOES 1-25, INCLUSIVE,<br>      Defendants | Chapter 13<br>Case No. 12-40803-MSH<br><br><br><br><br><br>Adversary Proceeding<br>No. 12-04054 |

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT**

      Defendants, Bank of America N.A. and Green Tree Servicing, LLC, (sometimes referred to as the "lender defendants") jointly move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012, counts I, III, VI, VII, VIII, and IX of the ten count first amended verified complaint filed by plaintiff-debtors, Gregory and Denise Perra. The lender defendants also move pursuant to Fed. R. Civ. P. 12(e), made applicable by Fed. R. Bankr. P. 7012, for a more definite statement with respect to counts II, IV, V, and X. The Perras oppose the motion.

1

**Facts**[1]

The Perras acquired their home located at 34 Pinehurst Avenue in Auburn, Massachusetts on July 14, 1995. On February 19, 2004, they refinanced their home mortgage indebtedness with a loan from Fleet National Bank, now Bank of America.

In June or July 2011, after falling behind on their mortgage payments, the Perras were approached by a representative of Bank of America and advised of available homeowner assistance programs. The Perras decided to seek a loan modification. On August 5, 2011, counsel for the Perras provided Bank of America with documentation requested by the bank in furtherance of the loan modification process. On August 8, 2011, the Perras sent Bank of America a letter requesting an accounting of all fees and charges on the loan. Bank of America neither acknowledged nor responded to the Perras' letter of August 8th.

In August and September of 2011, the Perras, through counsel, contacted Bank of America several times regarding the status of their modification request, and at least twice were told that additional documents were required. The requested documents were provided. On September 16, 2011, counsel for the Perras spoke to Erica at Bank of America who advised her that the Perras' information was under review. On October 18, 2011, the Perras' counsel contacted Bank of America again and a representative advised her that the required information had not been received and should be resubmitted. On the same day counsel resubmitted the documents. On October 20, 2011, counsel spoke with a Bank of America representative identified as Brian who stated that Bank of America no longer "owned" the loan in question and that counsel should be in touch with Green Tree. Counsel called Green Tree that day and provided the same loan modification application materials that had been submitted to Bank of

---

[1] In ruling on lender defendants' motion I assume that the factual allegations in the complaint are accurate. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

America. The following day, counsel spoke to a representative of Green Tree identified as Nick who stated that the Perras' application for a loan modification had been received and would be sent to the "HAMP team" for review.

Apparently during this same time period, Bank of America or Green Tree was in the process of foreclosing the mortgage on the Perras' home. However, during the aforementioned telephone conversation on October 21, 2011, Nick, the Green Tree representative, stated that the foreclosure auction, scheduled for October 24, 2011, would not take place.[2] Nevertheless, on October 26, 2011, a real estate agent representing Bank of America contacted the Perras and told them that Bank of America had purchased their home at a foreclosure sale held on October 24, 2011. On December 5, 2011, a foreclosure deed conveying the Perras' home to Bank of America was recorded at the Worcester County Registry of Deeds. The notice of mortgagee's sale of real estate attached to the deed states that the sale occurred on October 24, 2011.

On March 2, 2012, the Perras filed a joint petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code"). They instituted this adversary proceeding on May 14, 2012.

---

[2] Paragraph 37 of the complaint asserts "Nick completed the conversation by stating that if the application was accepted then the auction would not be postponed. However, if the application was denied, then the auction would be postponed and we would receive notification. Counsel re-iterated and confirmed that the auction would not take place on October 24, 2011 and Nick again assured it would not take place." Paragraph 37 of the complaint is at best confusing. The plaintiffs allege first that the bank representative told their attorney that the auction would be postponed only if their application for a loan modification were denied, then they go on to allege in the following sentence that he assured their attorney that the auction would not take place.

**Positions of the Parties**

In their complaint, the Perras raise numerous claims against the defendants, Bank of America, Green Tree, and "Does 1-25," arising primarily from their conduct in connection with the loan modification process and foreclosure sale, particularly the assurances made to the Perras' counsel over the telephone. Count I alleges against Bank of America and Does 1-25 a violation of the Real Estate Settlement Procedures Act (12 U.S.C. § 1602 *et seq.*), as amended by Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203 § 1463(c) ("RESPA"), for failure to respond to their August 8, 2011 letter requesting an accounting of the Perras' loan. Count II against Green Tree and Does 1-25 raises promissory estoppel and alleges that as a result of the promises made by representatives of the lender defendants regarding the status of the foreclosure, injustice can be avoided only by enforcement of the promises. In Count III, the Perras assert that all defendants breached their contractual obligations by misapplying payments made on their loan, thereby contributing to the Perras' default which ultimately led to the foreclosure. Counts IV and V allege that all defendants engaged in fraudulent and negligent misrepresentation by intentionally concealing material information from the Perras which they relied on to their detriment. Count VI asserts that all defendants breached the covenant of good faith and fair dealing implicit in all contracts by misapplying payments and providing false information. Count VII raises negligence claims against all defendants on the basis that they breached their duty of care in their negotiations with the Perras. Counts VIII and IX raise claims for intentional and negligent infliction of emotional distress. Count X seeks a declaratory judgment against all defendants that the foreclosure sale and deed are void as a result of the defendants' actions.

The Perras allege that as a result of the actions of the defendants, they have suffered damages including a loss of money and property, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, depression, and the incurring of attorneys' fees.

Bank of America and Green Tree move for dismissal of six of the ten counts in the complaint. They argue that count I, which is brought only against Bank of America and Does 1-25, should be dismissed as to Bank of America because it was not the servicer of the loan at the time of the foreclosure. The lender defendants assert that count III should be dismissed because the Perras failed to state any facts supporting how payments were misapplied to their account. They maintain that counts VI and VII should be dismissed because the defendants did not owe a duty to the Perras. As to Count VII, they also plead the economic loss doctrine as a bar to the Perras' claim of damages. Finally, they argue that counts VIII and IX should be dismissed as to Green Tree because Bank of America was the foreclosing party and that any alleged emotional distress resulting therefrom could not have been caused by Green Tree, and that the counts should be dismissed as to Bank of America as well because Bank of America owed no duty to the Perras and, in any event, Bank of America's conduct could not be considered extreme and outrageous.

Bank of America and Green Tree also move for a more definite statement on the four remaining counts – count II (promissory estoppel), count IV (fraudulent misrepresentation), count V (negligent misrepresentation), and count X (declaratory judgment that foreclosure sale and deed are void) asserting that they are not pled with particularity and they fail to "correspond" to individual defendants.

**Motion to Dismiss Standard**

A complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012. To avoid dismissal of a claim under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, when ruling on a motion to dismiss, the court may consider "facts and documents that are part of or incorporated into the complaint." *Trans–Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008). The court may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) quoting *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 20 (1st Cir. 2003); see also *In re Bailey*, 437 B.R. 721, 727 (Bankr. D. Mass. 2010).

The test for whether a motion to dismiss should be converted into a motion for summary judgment is "not whether supplementary materials were filed, but whether the court actually took cognizance of them." *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 19 (1st Cir. 1992). If the court relies on materials not included with the complaint and the materials are not included within the categories referenced by *Giragosian v. Ryan*, a motion to dismiss must be converted to one for summary judgment. *Giragosian v. Ryan,* 547 F.3d at 65 citing *Trans–Spec Truck Serv.*, 524 F.3d at 321.

The lender defendants appended six documents to their motion to dismiss: (1) a mortgage from Mr. and Mrs. Perra to Fleet Bank recorded on March 25, 2004, (2) a "Notice of

Assignment, Sale, or Transfer of Servicing Rights" dated April 15, 2010, addressed to Mr. Perra from Green Tree, (3) the docket from a prior bankruptcy case (No. 11-42459) filed by Mr. and Mrs. Perra on June 8, 2011, and dismissed on July 21, 2011, (4) a Foreclosure Deed and Affidavit recorded on December 5, 2011, conveying 34 Pinehurst Avenue, Auburn, Massachusetts to Bank of America (5) the docket of the main bankruptcy case from which this adversary proceeding arises, and (6) the court's opinion in *Darden v. Noyes*, 20071909D, 2010 WL 4456992 (Mass. Super. Aug. 13, 2010). The mortgage and foreclosure deed, the dockets of the two bankruptcy cases, and the *Darden v. Noyes* opinion, may be considered without converting the defendants' motion into one for summary judgment because they are collectively either part of the public record or are eligible for judicial notice. I will not, however, consider the "Notice of Assignment, Sale, or Transfer of Servicing Rights" at this stage because it does not come within any of the categories suitable for consideration in a motion to dismiss.

### Discussion

**Count I. RESPA Violation**

Count I of the complaint alleges that Bank of America (but not Green Tree) violated RESPA because the Perras' August 8, 2011 letter requesting an accounting was a qualified written request ("QWR") pursuant to RESPA and that the lender defendants failed to respond to it. Pursuant to § 2605(e) of RESPA, a QWR is defined as written correspondence other than a payment medium supplied by a servicer that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. §

7

2605(e)(1)(B). The servicer must respond within the timeframe required by the statute or incur liability for any actual damages suffered by the borrower. 12 U.S.C. § 2605(e)-(f).

The August 8, 2011 letter the Perras sent to Bank of America as described in the complaint appears to have been a QWR as defined by § 2605(e)(1)(B). In their motion to dismiss, the defendants do not dispute that the content of the letter complies with requirements for a QWR. They argue that the claim should be dismissed because the QWR was sent to the wrong party. Green Tree, not Bank of America, was the servicer of the mortgage during the time in question say the lender defendants. As a result, they assert that the Perras' request cannot be a QWR because it was not made to a "servicer" as required by 12 U.S.C. § 2605.[3] The lender defendants support their assertion by attaching to their motion to dismiss a Notice of Assignment, Sale, or Transfer of Servicing Rights addressed to Mr. Perra, informing him of the transfer of servicing rights to Green Tree. But as noted above, I may not consider this document for purposes of a motion to dismiss. Furthermore, according to the allegations in the complaint, in the weeks and months following the August 8, 2011 letter, the Perras, through counsel, regularly communicated with representatives of Bank of America regarding the status of their account and a loan modification, and were not once told the loan had been transferred. It was not until October 20, 2011, that counsel for the Perras was informed that the Perras should be in contact with Green Tree because Bank of America no longer "owned" the loan.

---

[3] "The term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2)(B). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

8

The lender defendants also claim that the Perras have failed to allege that the violation of RESPA resulted in actual damages to them. Under RESPA, a borrower may recover for "any actual damages" caused by a violation. 12 U.S.C. § 2605(f)(1); See also *Moore v. Mortgage Elec. Registration Sys., Inc.*, 848 F. Supp.2d 107, 123 (D.N.H. 2012). While the issue of whether a plaintiff must plead actual damages in order to state a claim under RESPA is not settled in this district,[4] I need not choose sides because in this case the complaint contains sufficient allegations of actual damages. Count I alleges that as a result of the RESPA violation the Perras suffered "damages and costs of suit" and elsewhere in the complaint they allege actual damages including destruction of credit, anxiety, severe emotional distress, and sleeplessness as a result of the defendants' conduct.

The motion to dismiss as to count I of the complaint must be denied.

**Count III. Breach of Contract**

The third count of the complaint alleges that the defendants misapplied mortgage payments made by the Perras in breach of the "mortgage note" contract between the Perras and the defendants, without identifying which defendant specifically. To establish a breach of contract claim, a plaintiff must prove: (1) a valid contract with the defendant; (2) the defendant's breach; (3) and damage to the plaintiff as a result of the breach. *Singarella v. Boston*, 342 Mass. 385, 387 (1961).

Count III quotes language from the original mortgage that "all payments received by Lender shall be applied first to interest accrued through the date of payment, then to principal due to the date of payment, then to other charges, if any, that have not been added to principal

---

[4] *In re Julien*, 10-22026-WCH, 2013 WL 1124043 at *6 n. 32 (Bankr. D. Mass. Mar. 18, 2013).

9

and, finally, to principal that is not yet due." Without elucidating who breached these terms or how, the Perras merely make the conclusory statement in paragraph 60 of the complaint that "Defendants misapplied payments made by the Plaintiffs."

The Perras do not offer any details as to how the payments were misapplied or by whom nor do they identify any account discrepancies or possible errors in the application of payments. The Perras have failed to "identify a *single* payment application that would indicate a potential breach of the contract's terms." *In re Robert*, 432 B.R. 464, 472 (Bankr. D. Mass. 2010) (emphasis in original). Accordingly, the lender defendants' motion to dismiss count III should be granted.

**Count VI. Breach of the Implied Covenant of Good Faith and Fair Dealing**

The Perras allege in count VI that both Bank of America and Green Tree breached the covenant of good faith and fair dealing which under Massachusetts law is implicit in all contracts by misapplying payments and entering into negotiations regarding their loan and providing them with "false information". Having determined that the Perras' count III breach of contract claim has been inadequately pled, their allegation that defendants breached the implied covenant of good faith and fair dealing by misapplying mortgage payments necessarily fails. As to the second basis for the breach of the implied covenant, that the lender defendants provided them with false information, this claim is simply too vague to adequately apprise defendants of the conduct the Perras are complaining about. The lender defendants' motion to dismiss count VI must be granted.

**Count VII. Negligence**

Under Massachusetts law, to state a claim for negligence a plaintiff must establish that the defendant owed the plaintiff a duty of reasonable care, the defendant breached that duty, damage resulted, and a causal relationship exists between the breach of duty and the harm suffered. *Jupin v. Kask*, 447 Mass. 141, 146, 849 N.E.2d 829, 834-35 (2006).

The Perras allege that the "[d]efendants knew and had a duty of care to act as a reasonable lender in lending to [p]laintiffs and negotiating any changes to the terms of the contract," and that breach of the duty of care caused them injury including the loss of their home and more generally certain physical injuries.

Under Massachusetts law, a violation of a statute or regulation can be evidence of negligence. *Speleos v. BAC Home Loans Servicing, L.P.*, 755 F. Supp. 2d 304, 311 (D. Mass. 2010) citing *Berish v. Bornstein*, 437 Mass. 252, 770 N.E.2d 961, 979 (2002). In *Speleos v. BAC Home Loans Servicing, L.P*, the plaintiffs were found to have a plausible negligence claim arising from the defendants' alleged violation of HAMP guidelines.[5] *Speleos*, 755 F. Supp.2d at 311. Committing a violation of HAMP guidelines may be considered a breach of duty if "the harm that the Plaintiffs allegedly incurred is of the kind that the Guidelines were designed to prevent and the Plaintiffs are within the class of persons that the Guidelines are intended to benefit." *Id.* citing *Sorenson v. H & R Block, Inc.*, 2002 WL 31194868, at *10, 2002 U.S. Dist. LEXIS 18689, at *30. While the Perras do not allege explicitly that defendants violated HAMP

---

[5] "The Home Affordable Modification Program, known as HAMP, is part of the initiative established under the federal government's Troubled Asset Relief Program ("TARP") to implement the Economic Stabilization Act's objective to help families keep their homes and stabilize communities. For a more detailed discussion of HAMP, see *Mitchell v. Wells Fargo Bank, N.A. (In re Mitchell)*, 476 B.R. 33 (Bankr. D. Mass. 2012)." *Silveira et al v. Wells Fargo Bank, N.A. et al (In re Silveira)*, 2013 WL 1867472 at *11 n. 25 (Bankr. D. Mass. May 3, 2013).

11

guidelines, they allege that their loan modification application would be referred to Green Tree's "HAMP team," thereby suggesting that their modification process was pursuant to HAMP.

The lender defendants assert that the Perras' negligence claim is for purely economic losses and is barred by the economic loss doctrine. The lender defendants cite *FMR Corp. v. Boston Edison Co.* for the proposition that purely economic losses are unrecoverable in tort actions in the absence of personal injury or property damage. *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993). The lender defendants read the complaint too narrowly. Although not raised in Count VII, the complaint contains allegations of physical harm including loss of appetite and sleeplessness sufficient to prevent the application of the economic loss doctrine at this stage.

Nevertheless count VII in its current form is too vague as to whether the Perras' loan modification was subject to the HAMP guidelines in the first place and for this reason I must grant the lender defendants' motion to dismiss this count.

**Count VIII. Intentional Infliction of Emotional Distress**

In order to be successful on a claim for intentional infliction of emotional distress under Massachusetts law, a plaintiff must prove: "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Roman v. Trustees of Tufts College*, 461 Mass. 707, 717, 964 N.E.2d 331, 341 (2012) quoting *Sena v. Commonwealth*, 417 Mass. 250, 263 - 264, 629 N.E.2d 986 (1994). See also *Limone v. United States,* 579 F.3d 79, 94 (1st Cir. 2009); *Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315, 318 - 19 (Mass. 1976).

12

The Perras allege that by conducting a foreclosure sale of their home, the defendants' conduct was extreme and outrageous. But when a bank acts on what it believes is its right to foreclose, such action does not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress. *In re Lopez*, 486 B.R. 221, 233-34 (Bankr. D. Mass. 2013) citing *In re Mae*, 460 B.R. 1, 4 (Bankr. D. Mass. 2011). Even when a bank promises not to foreclose and then does so, such conduct is not considered so extreme as to give rise to a claim for intentional infliction of emotional distress. As the court in *Akar v. Fed. Nat'l Mortg. Ass'n* observed:

> [P]laintiffs allege that Wells Fargo conducted a foreclosure sale after repeatedly assuring them that the sale would be postponed while their loan modification request was pending… Although such behavior supports plaintiffs' claims for bad faith, misrepresentation and/or violation of Chapter 93A, the facts alleged do not warrant a finding of extreme and outrageous conduct that is "beyond all bounds of decency" or "utterly intolerable in a civilized community." See *Foley v. Polaroid Corp.,* 400 Mass. 82, 99, 508 N.E.2d 72 (Mass. 1987); see also *Parker v. Bank of America,* No. 11–1838, 2011 WL 6413615, at *3, *12 (Mass. Super. Dec. 16, 2011) (allegations of false or broken promises from bank could give rise to claim for fraud but did not constitute extreme or outrageous conduct).

*Akar v. Fed. Nat'l Mortg. Ass'n*, 845 F. Supp. 2d 381, 385 (D. Mass. 2012). See also *Young v. Wells Fargo Bank, N.A.*, 12-1405, 2013 WL 2165262 (1st Cir. May 21, 2013) ("Without minimizing the significance of these allegations, the complaint alleges no facts showing that Wells Fargo acted with the requisite intent or that the inconvenience and agitation Young endured rose to such a level that 'no reasonable [person] could be expected to endure it" (internal citations omitted).

The defendants' motion to dismiss count VIII therefore should be granted.

**Count IX. Negligent Infliction of Emotional Distress**

To establish a claim for negligent infliction of emotional distress, a plaintiff must show: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 132, 605 N.E.2d 805, 807 (1993) citing *Payton v. Abbott Labs*, 386 Mass. 540, 557, 437 N.E.2d 171, 181 (1982).

Like count VII, count IX lacks the necessary specificity as to negligence to satisfy the first prong of the *Sullivan* test and therefore cannot survive the lender defendants' motion to dismiss.

**Motion for a More Definite Statement**

The lender defendants move for a more definite statement pursuant to Fed. R. Civ. P. 12(e), made applicable to this proceeding by Fed. R. Bankr. P. 7012 as to count II (promissory estoppel), count IV (fraudulent misrepresentation), count V (negligent misrepresentation), and count X (declaratory judgment that foreclosure sale and foreclosure deed are void).

Rule 12(e) allows a party to move for a more definite statement if a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Generally courts do not invoke Rule 12(e), but "more often dismiss such complaints with leave to amend." *Fease v. Town of Shrewsbury*, 188 F. Supp.2d 16, 17 (D. Mass. 2002) citing *Cash Energy, Inc. v. Weiner*, 768 F. Supp. 892, 897 (D. Mass. 1991). "Unintelligibility of the complaint," rather than a lack of detail, is the basis for evaluating a motion for a more definite statement. *In re APF Co.*, 274 B.R. 408, 425 (Bankr. D. Del. 2001) citing *In re American Intern. Airways, Inc.*, 66 B.R. 642, 645 (Bankr. E.D. Pa. 1986).

14

The lender defendants move for a more definite statement on the theory that these counts are not adequately pled pursuant to Fed. R. Civ. P. 9(b) because they contain allegations of fraud and that the claims do not clearly "correspond" to the individual defendants which I assume means it is not clear against whom the allegations in these counts are directed.

As to counts II, IV, and V, the complaint details that on October 21, 2011, counsel for the Perras spoke with Nick, a Green Tree representative, who stated that the foreclosure auction scheduled for October 24, 2011 would not take place. The complaint provides the date of the conversation which included the promise at issue, the name of the individual who the Perras claim made the promise, and the terms of the promise the Perras claim they relied upon which caused them not to take further action to protect their home.

The problem is paragraph 37 of the complaint which states "Nick completed the conversation by stating that if the application was accepted then the auction would not be postponed. However, if the application was denied, then the auction would be postponed and we would receive notification." This makes no sense and for this reason I must grant the lender defendants' motion for a more definite statement as to counts II, IV, and V.

As to count X the Perras seek a declaratory judgment that the foreclosure sale and deed are void on the basis that the lender defendants conducted a wrongful foreclosure of their home. The lender defendants attempt to characterize count X as a claim for fraud or misrepresentation, and argue that the claim should be subject to a heightened pleading standard. Not only is this the incorrect standard for pleading wrongful foreclosure, a motion for a more definite statement is not the proper vehicle for challenging a claim on the basis that is vague or ambiguously pled. *In re APF Co.*, 274 B.R. at 425. Again, however, this count is to some extent dependent on the

befuddling allegations of paragraph 37 of the complaint and I will, therefore, grant lender defendants' motion as to this count as well.

### Conclusion and Order

For the reasons set forth above, it is ORDERED that the lender defendants' motion to dismiss is denied as to count I and granted as to counts III, VI, VII, VIII and IX of the complaint and their motion for a more definite statement is granted as to counts II, IV, V, and X. The plaintiffs are given leave to file within 30 days of the date of this order an amended complaint addressing the various infirmities identified with respect to their complaint, including as to any of the dismissed counts.

By the Court

Dated: May 22, 2013

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel appearing:

Rosaleen J. Clayton, Esq.
Auburn, MA
For plaintiffs Gregory and Denise Perra

Julie A. Brennan, Esq.
Prince Lobel Tye LLP
Boston, MA
For defendants Bank of America N.A. and
Green Tree Servicing, LLC